```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CIAMARA CORP.,                                              :
                                                            :
                            Plaintiff,                      :
                                                            :      13 Civ. 1142 (JMF)
            -v-                                             :
                                                            :      MEMORANDUM OPINION
WIDEALAB, INC., et al.,                                     :           AND ORDER
                                                            :
                            Defendants.                     :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/05/2013

JESSE M. FURMAN, United States District Judge:

Plaintiff Ciamara Corporation ("Ciamara"), a high-end audio components retailer, sues Defendant Widealab, Inc. ("Widealab"), a high-end audio components manufacturer; its Chief Executive Officer, Defendant Harry Lee; its Marketing Team Leader, Defendant Charles Kim; and other nominal corporate and individual defendants. (Compl. ¶¶ 1-7 (Docket No. 7 Ex. A) ("Compl.")). In essence, Ciamara alleges, in state-law claims heard by this Court in diversity, that Defendants breached an agreement naming Ciamara the exclusive North American Retailer for Widealab's Aurender S10 ("S10") product. (Compl. ¶ 10). In addition to breach-of-contract claims, Ciamara also pleads causes of action that sound in tort (fraudulent inducement, tortious interference) and equity (quantum meruit, unjust enrichment). (Id. ¶ 9).

Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's claims for fraudulent inducement, tortious interference, quantum meruit, and unjust enrichment. (Mem. Law Supp. Mot. To Partially Dismiss Compl. as Against Def. Widealab, Inc. 1 (Docket No. 8) ("Defs.' Mem."); Docket No. 6). Defendants also move to dismiss Plaintiff's request for loss-of-future-profits, harm-to-business-reputation, and loss-of-goodwill damages related to their breach-of-contract claims. (Defs.' Mem. 7-8). For the reasons discussed below, Defendants' motion is GRANTED in all respects.

## BACKGROUND

On a Rule 12(b)(6) motion, a court must take the facts alleged in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *See N.Y. Life Ins. Co. v. United States*, 724 F.3d 256, 261 (2d Cir. 2013). Accordingly, the following statement of facts draws on the Complaint and documents it references, most notably the contract between Ciamara and Widealab. Beginning on June 21, 2011, Ciamara and Widealab began negotiating an agreement whereby Ciamara would sell Widealab's products in the United States. (Compl. Ex. A ¶ 4). During the negotiation period, Widealab engaged in negotiations with at least two of Ciamara's competitors. (Compl. Ex. A ¶ 10). On September 13, 2011, after these negotiations had reached a mature point, Plaintiff received an email from Defendant Kim, with the draft contract attached, stating: "This is just to officially confirm that our CEO is okay with the revised proposal and agrees to Ciamara being our exclusive North American distributor. We will try to list Ciamara as the Exclusive North American Distributor on our website today, or at latest by tomorrow." (Compl. ¶ 11). Later that same day, Ciamara and Widealab entered into the contract, under which Ciamara "would market and distribute for high end audio products provided by" Widealab. (Compl. ¶ 10). As part of that contract, Widealab agreed to name Ciamara as the "sole distributor of its product," the S10, "in the United States and Canada." (*Id.*; *accord* Compl. Ex. B ("Contract"), at 2). The contract specified that Ciamara would remain the exclusive distributor for a two-year term; violation of that clause incurred a twenty percent penalty. (Compl. ¶ 11).

Ciamara alleges that, in reliance on the contract and on Kim's email, it proceeded to purchase fourteen S10 units from Widealab. (Compl. ¶ 12). Ciamara also engaged the services of a public-relations firm, hired a sales manager to a two-year contract to manage the product line, traveled to audio conventions, contacted approximately forty other dealers regarding the S10, and listed on its website that it had Widealab products available for sale. (Compl. ¶ 12).

2

On November 26, 2011, however, all references to Ciamara were removed from Widealab's website. (Compl. ¶ 13). Four days later, Lee emailed a Ciamara representative and indicated that Widealab was no longer interested in having Ciamara serve as the exclusive S10 distributor. (Compl. ¶ 14). On January 16, 2012, Widealab listed a Ciamara competitor, Goodwin's High End, as a North American dealer. (Compl. ¶ 15). Ciamara alleges that it has fourteen remaining unsold S10 units. (Compl. ¶ 17). Ciamara initiated this action in the Supreme Court of the City of New York, County of New York, on November 29, 2012. (Compl. 10). Defendants removed the case to this Court on February 19, 2013. (Docket No. 1).

## THE LEGAL STANDARD

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). The Court will not dismiss any claims unless Plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, Plaintiff must allege facts showing "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if Plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570. Moreover, Rule 9(b) requires Plaintiff to plead all fraud claims "with particularity," specifying "the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

3

**DISCUSSION**

Defendants move to dismiss Plaintiff's claims for (1) fraud, (2) tortious interference, (3) unjust enrichment and quantum meruit, and (4) speculative damages under its breach-of-contract theory. In opposition, Plaintiff does not contest Defendants' claim that its tortious interference claim fails to state a claim, so that claim is deemed abandoned. *See, e.g.*, *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) ("In his brief, [Plaintiff] did not raise any arguments opposing Defendants' motion regarding these . . . claims. Accordingly, the Court deems [these] claims abandoned."). The Court will address the other claims in turn.

**A. Fraud**

First, Defendant gives six reasons why Plaintiff's fraud claim should be dismissed: (1) because the offending statements were not false; (2) because the offending statements were not directed at Plaintiff; (3) because Plaintiff did not rely on the offending statement; (4) because Defendants made only future promises; (5) because the economic loss rule precludes Plaintiff's claims sounding in tort, rather than contract; and (6) because Plaintiff has failed to plead its fraud claims with the level of particularity required by Rule 9(b). The Court agrees with the first and fourth reasons, and therefore need not address the others.

As an initial matter, Plaintiff fails to allege falsity, which is indisputably an "essential element[]" of a fraud claim. *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995). Plaintiff identifies two statements as allegedly false: Kim's statement that Widealab agreed to the exclusivity agreement and Kim's promise that Widealab would list Ciamara as a distributor on its website. (Mem. Law Opp'n Def.'s Mot. To Partially Dismiss Compl. as Against Widealab, Inc. 6 (Docket No. 12) ("Pl.'s Mem.")). But even an indulgent reading of the complaint makes plain that these statements were not false when made. The first statement, that Widealab agreed to the exclusivity provision in the contract, is best shown to be true by the simple fact that Widealab agreed to the contract containing that very provision that very day. In other words, the

4

very contract that Plaintiff relies upon is conclusive evidence of the implausibility of Plaintiff's fraud claim. Similarly, as Defendants argue (Defs.' Mem. 3), the complaint contains no allegation that Widealab failed to list Ciamara on its website; indeed, the complaint's own logic belies such an allegation. (*See* Compl. ¶ 13 ("On or about November 26, 2011, Widealab took Ciamara off its website.")). Thus, Plaintiff's fraud claims fail as a matter of law.

Even if Plaintiff had alleged falsehood with respect to its fraud claims, Plaintiff's claims would fail for the independent reason that the complaint identifies only future, rather than current, promises. Defendants argue that Plaintiff complains only of *future* promises, to the extent they refer to promises outside the four corners of the contract at all. (Defs.' Mem. 4-5; *see also* Reply Mem. Law Supp. Mot. To Partially Dismiss Compl. as Against Def. Widealab, Inc. 1-3 (Docket No. 15) ("Defs.' Reply Mem.")). Under New York law, claims for breached promises to take action in the future sound in contract rather than tort. *See Rubenstein v. E. River Tenants Corp.*, 527 N.Y.S.2d 29, 32 (1st Dep't 1988) ("No cause of action for fraud arises when the only fraud alleged is, in essence, a failure to fulfill promises to perform acts in the future, since failure to fulfill such promises, even where relied upon to the promisee's detriment, is a breach of contract, not fraud."). Here, both promises are properly understood as ones to take action in the future: the promise to list Ciamara on the Widealab website "at latest by tomorrow" (Compl. ¶ 11) is obviously so, while the statement of agreement to maintain exclusivity best understood as a present *agreement* containing promises not to deal with other distributors *in the future* rather than a statement about the world at that moment. (*See* Defs.' Reply Mem. 2).

**B. Equitable Claims**

Next, Defendants challenge Plaintiff's two equitable claims, for unjust enrichment and quantum meruit, on the ground that they fail to state a claim. (*See* Defs.' Mem. 10-12; Defs.' Reply Mem. 4-6). Under New York law, quantum meruit and unjust enrichment claims may be analyzed in tandem as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant*

5

*Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).[1] To recover on such a claim, Plaintiff must plead facts sufficient to demonstrate "'(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Id.* (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)).

Here, Plaintiff alleges that it expended $16,000 to market the S10 product in reliance on Defendants' statements and paid an additional $41,714.53 on freight, trade shows, and Widealab products. (Compl. ¶ 22). But all such expenditures came after not only the allegedly inducing statement, but also the execution of the contract governing the business relationship between Widealab and Ciamara. This fact is fatal to plaintiff's equitable claims, as "a quasi-contractual obligation is one imposed by law *where there has been no agreement or expression of assent, by word or act, on the part of either party involved.*" *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) ("In light of the agreements among the parties, the district court properly dismissed [Plaintiff's] claims that it was entitled to recover from [Defendant] for unjust enrichment . . . ."). In addition, Plaintiff fails to plead that any Defendant "accepted" the benefit of Plaintiff's efforts outside the context of the contract or that Plaintiff expected compensation outside that context. As a result, Plaintiff's restitution claims fail.

**C. Damages**

Finally, Defendants argue that, as a matter of law, Plaintiff is not entitled to damages for lost future profits, harm to business reputation, and loss of goodwill because they are too

---

[1] As this Court has previously explained, "quantum meruit and unjust enrichment are not separate causes of action. . . . Rather, unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992); *accord Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996).

speculative under the analysis required by *Kenford Co. v County of Erie*. 67 N.Y.2d 257, 261 (1986) (*Kenford I*). (Defs.' Mem. 7-8; Defs.' Reply Mem. 6-7). Under New York law, parties may recover for loss of future profits, goodwill, or harm to business reputation only if the damages were within "'the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" *Kenford Co. v. Cnty. of Erie*, 73 N.Y.2d 312, 319 (1989) ("*Kenford II*") (quoting *Chapman v. Fargo*, 223 N.Y. 32, 36 (1918)). Determining the extent of the parties' contemplated damages is a question bound by context, and is informed by, among other things, "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made." *Kenford II*, 73 N.Y.2d at 319 (quoting *Globe Ref. Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544 (1903)).

Here, Plaintiff relies on the specificity of its "Volume Targets" as listed in the contract, including sale of "50 to 100 units in year 1" and "150 to 350 units in year 2." (Contract at 3). The contract also specifies that such targets are "sales forecasts that will depend on a variety of factors, including timely delivery of product, advertising, reviews, public relations activities, quality control, and after-market service and support." (*Id.*). These figures, however, only describe how many S10 units *Ciamara* "conservatively estimates" it can sell — that is, how many sales it will endeavor to "target" — not how many units the parties jointly anticipate will be sold. (Contract at 3). Fairly read, therefore, the sales targets more accurately describe obligations Ciamara undertook than promises on the part of Widealab to pay in the event of its breach. *See Phx. Warehouse of Cal., LLC v. Townley, Inc.*, No. 08 Civ. 2856 (NRB), 2011 WL 1345134, at *5 (S.D.N.Y. Mar. 29, 2011) ("The key consideration is not whether the breaching party could have foreseen that its counterparty might suffer the damages in question, but whether it 'contemplated at the time of the contract's execution that it assumed legal responsibility for these damages upon a breach of the contract." (quoting *Kenford II*, 73 N.Y.2d at 320)). As a

7

result, Plaintiff's claims for lost profits based on the volume targets in the complaint are too speculative to survive Defendants' motion, and must be dismissed.  For the same reasons, Plaintiff's claims for loss of goodwill and business reputation are also dismissed, because those two claims are duplicative and thus governed by the same analysis as Plaintiff's claims for lost future profits.  *See Toltec Fabrics, Inc. v. August Inc.*, 29 F.3d 778, 780-81 (2d Cir. 1994) (noting that claims for loss of goodwill are sometimes called claims for "loss of future profits, or loss of customers, or damage to reputation" and that "New York law permits recovery for loss of goodwill only if the claimant meets certain stringent requirements of proof").

## CONCLUSION

For the reasons stated above, Plaintiff's claims for fraudulent misrepresentation, unjust enrichment, quantum meruit, and tortious interference are DISMISSED, as is its request for speculative damages under its contract claim.  Plaintiff's breach-of-contract claims remain.  The Clerk of Court is directed to terminate Docket Number 6.

SO ORDERED.

Dated: December 5, 2013  
      New York, New York

_____  
JESSE M. FURMAN  
United States District Judge